UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| JOSUE ISRRAEL MARQUEZ VAZQUEZ,<br><br>    Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>    Respondents. | No. 6:26-CV-011-H |

**ORDER**

Before the Court is Josue Isrrael Marquez Vazquez's emergency motion for a temporary restraining order or preliminary injunction. Dkt. No. 2. Marquez Vazquez contends that his detention without bond, under recent Board of Immigration Appeals precedent, violates the Fifth Amendment's Due Process Clause and the Immigration and Nationality Act. *Id.* at 8. But this argument flatly contradicts longstanding principles of constitutional law, the statute's plain language, and the history of legislative changes enacted by Congress. Thus, Marquez Vazquez fails to meet the high bar for emergency relief, and the Court denies the motion.

**1.   Background**

Marquez Vazquez is a native and citizen of Mexico. Dkt. No. 1-2 at 40. He entered the United States illegally in 2010 and has resided here since. Dkt. No. 2 at 12. In August 2025, Marquez Vazquez was transferred to ICE custody following his arrest in Ballinger, Texas. *Id.* He was promptly issued a Notice to Appear charging him with removability as "an alien present in the United States without being admitted or paroled." *Id.*; Dkt. No. 1-2 at 40; *see* 8 U.S.C. § 1182(a)(6)(A)(i). In late December, an immigration judge denied a

bond hearing, citing a lack of jurisdiction. Dkt. Nos. 2 at 8; 1-2 at 44. That conclusion followed from the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, holding that aliens present in the United States without admission must be detained under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. 216, 220 (BIA 2025). Marquez Vazquez is currently detained without bond at the Eden Detention Center in Eden, Texas. Dkt. No. 1-2 at 3.

Months after his detention began, Marquez Vazquez filed a petition for a writ of habeas corpus requiring the respondents to either release him immediately or provide a bond hearing before a neutral immigration judge. Dkt. No. 1 at 74. He also filed an emergency motion for TRO or preliminary injunction "ordering his immediate release from ICE custody" or, alternatively, "a prompt bond hearing at which the government bears the burden of demonstrating flight or safety risk by clear and convincing evidence." Dkt. No. 2 at 26. The Court ordered the respondents to show cause why Marquez Vazquez's petition and motion should not be granted. Dkt. No. 5. The Court gave the respondents 20 days to file their answer. *Id.* at 1.

2.  **Legal Standard**

Federal Rule of Civil Procedure 65 authorizes courts to issue temporary restraining orders and injunctions. A temporary restraining order, or TRO, is "simply a highly accelerated and temporary form of preliminary injunctive relief." *Hassani v. Napolitano*, No. 3:09-CV-1201, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009). Thus, the party seeking a TRO or preliminary injunction must satisfy the same four-factor standard for preliminary injunctive relief. *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 645 (N.D. Tex. 2021). The party seeking relief must show (1) a substantial likelihood of success on the

merits; (2) a substantial threat of irreparable harm; (3) the balance of hardships weighs in the movant's favor; and (4) issuing the injunction will not disserve the public interest. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013).

A TRO, like any injunction, is an "extraordinary remedy." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976). "The decision to grant [such relief] 'is to be treated as the exception rather than the rule.'" *Jones v. Bush*, 122 F. Supp. 2d 713, 718 (N.D. Tex. 2000) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)). To prevail, the movant "must satisfy a cumulative burden of proving each of the four elements" for injunctive relief. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). "Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the TRO or preliminary injunction." *Speed v. America's Wholesale Lender*, No. 3:14-CV-3425, 2014 WL 4755485, at *1 (N.D. Tex. Sept. 24, 2014) (emphasis in original).

3. **Analysis**

Marquez Vazquez fails to demonstrate a substantial likelihood of success on the merits, which is fatal to his motion for TRO. The Court recognizes that Marquez Vazquez's habeas petition raises additional arguments that were not included in his emergency motion for TRO. Given the need to resolve the motion on an accelerated timeline, the Court will address all other arguments when resolving Marquez Vazquez's habeas petition (Dkt. No. 1), which remains pending.

    **A.    Marquez Vazquez is unlikely to show that his detention without bond violates the Fifth Amendment's Due Process Clause.**

Marquez Vazquez maintains that his detention without bond contravenes his due process rights under the Fifth Amendment. Dkt. No. 2 at 14–17. His argument, however, suffers from several flaws. First, the Supreme Court has endorsed the constitutionality of

detaining aliens without bond during the pendency of removal proceedings. In *Demore v. Kim*, the Supreme Court upheld the constitutionality of Section 1226(c) of the INA, which requires that certain aliens be detained during removal proceedings without bond. 538 U.S. 510, 522 (2003). The Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Id.* at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.* Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. To the contrary, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522. Accordingly, "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings."[1] *Id.* at 526.

Marquez Vazquez ignores these background principles. Instead, he relies solely on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Dkt. No. 2 at 14–15. The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges. The Supreme Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In fact, the "Supreme Court when confronted with

---

[1] As an "applicant for admission," Marquez Vazquez has "only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297. No part of the statute "says anything whatsoever about bond hearings." *Id.* Accordingly, Marquez Vazquez is not entitled to a bond hearing as a matter of procedural due process.

constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). Marquez Vazquez provides no reason why the Court should apply *Mathews* here.

That said, Marquez Vazquez's detention is likely constitutional even under *Mathews*. Applying that test, courts consider: (1) the individual's private interest; (2) the risk of erroneous deprivation of the right absent further procedures; and (3) the government's interest. 424 U.S. at 335. "Ultimately, *Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz*, 53 F.4th at 1206 (citing *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)).

Beginning with the first factor, Marquez Vazquez surely "has a significant private interest in being free from detention." Dkt. No. 2 at 15. But the Supreme Court's "longstanding view [is] that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 526. Indeed, the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process" for more than a century. *Id.* at 523 (citing *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)).

Next, Marquez Vazquez contends that the second factor cuts in his favor because the lack of a bond hearing absolves the government from having to justify its interest in detaining him (e.g., to assure his appearance at future hearings and to promote public safety). Dkt. No. 2 at 16. But even if Marquez Vazquez is right about factor two, the risk of erroneous deprivation is outweighed by the government's "sovereign prerogative[s]" in matters of immigration. *Landon*, 459 U.S. at 34; *see Dep't of State v. Muñoz*, 602 U.S. 899, 912 (2024) (noting the government's "sovereign authority to set the terms governing the

admission and exclusion of noncitizens"). Thus, even if *Mathews* applies, Marquez Vazquez has not shown a substantial likelihood of success on his due process claim.

> **B.	The text of the INA weighs heavily against Marquez Vazquez's position regarding the availability of bond.**

Marquez Vazquez also argues that his detention without bond violates the INA. Dkt. No. 2 at 17–22. As he puts it, his detention "is governed by the discretionary framework of 8 U.S.C. § 1226, which mandates the very bond hearing he has been denied." *Id.* at 18. He says that the respondents, on the other hand, justify his mandatory detention under Section 1225(b)(2)(A). *See id.* at 8–9. Whether the INA's mandatory-detention or discretionary-detention provision applies here is a question of statutory interpretation.[2] When the Court interprets statutes, "[t]he statutory text is invariably the first and primary consideration." *Barr v. SEC*, 114 F.4th 441, 448 (5th Cir. 2024). And if the text is "clear and unambiguous, the interpretive inquiry ends." *Id.*

The Court is unpersuaded that the INA's mandatory-detention provision is "unambiguously" limited to "arrival[s] at a port of entry or the border, not to an arrest occurring long after the act of entry is complete." Dkt. No. 2 at 19. The provision applies to "applicant[s] for admission," not merely arriving aliens. 8 U.S.C. § 1225(b)(2)(A). To be sure, an arriving alien is an applicant for admission: Subsection 1225(a)(1) defines applicant for admission, in part, as "[a]n alien . . . who arrives in the United States." But the same provision also defines an applicant for admission as "[a]n alien present in the United States who has not been admitted." *Id.* "When a statute includes an explicit definition, [the

---

[2] Although Section 1226(c) also mandates detention for certain classes of aliens, this Order refers to Sections 1225 and 1226 as the mandatory- and discretionary-detention provisions, respectively, for the sake of simplicity.

Court] must follow that definition . . . ." *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (quoting *Burgess v. United States*, 553 U.S. 124, 130 (2008)). Thus, given that Marquez Vazquez is "[a]n alien present in the United States who has not been admitted," the plain language of the mandatory-detention provision weighs heavily against his assertion that he is subject only to discretionary detention under Section 1226. *See* 8 U.S.C. § 1225(a)(1); *see also, e.g.*, *Zuniga v. Lyons*, __ F. Supp. 3d __, No. 1:25-CV-221, 2025 WL 3755126, at *3–5 (N.D. Tex. Dec. 29, 2025) (denying a habeas petition raising the same arguments as Marquez Vazquez); *Garibay-Robledo v. Noem*, __ F. Supp. 3d __, No. 1:25-CV-177, 2025 WL 3264482, at *3–4 (N.D. Tex. Sept. 15 2025) (denying reconsideration of a TRO because the petitioner was an applicant for admission under the mandatory-detention provision).

The Executive Office of Immigration Review's regulations, which were drafted following the Illegal Immigration Reform and Immigrant Responsibility Act of 1996's (IIRIRA) enactment, confirm this understanding of the term "applicant for admission." An interim rule provides that "*[d]espite being applicants for admission*, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (emphasis added). "The effect of this change," the rule goes on to explain, "is that inadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an immigration judge, while arriving aliens do not." *Id.* The clear implication of this language is that, despite possessing statutory authority to deny bond to all non-admitted aliens, the government previously declined to exercise the full extent of its authority under the INA.

Then, in July 2025, the U.S. Department of Homeland Security distributed an internal policy (which was later leaked) titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." *See Maldonado Vazquez v. Feeley*, __ F. Supp. 3d __, No. 2:25-CV-1542, 2025 WL 2676082, at *5 & n.2 (D. Nev. Sept. 17, 2025) (describing the leaked DHS policy and noting that the government did not contest its authenticity). The policy advised that DHS, in coordination with the U.S. Department of Justice, "revisited its legal position" and concluded that Section 1225, not Section 1226, "is the applicable immigration detention authority for all applicants for admission." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607, Am. Immigr. Laws. Ass'n (July 8, 2025).[3] Thus, DHS maintained the position—which the BIA later adopted in *Yajure Hurtado*, 29 I. & N. Dec. at 220—that all aliens who are present without admission are ineligible for bond. The BIA acknowledged that "for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection," but it did "not recall either DHS or its predecessor, the Immigration and Naturalization Service," ever challenging that practice. *Id.* at 225 n.6. When the current Trump Administration took office, it was free to reconsider the government's position and to exercise the statutory right to deny bond hearings for "applicant[s] for admission."

### C. The statutory history of the INA supports the Court's interpretation of the mandatory-detention provision.

"Statutory history, 'the record of enacted changes Congress made to the relevant statutory text over time,' can also provide helpful context" for statutory interpretation.

---

[3] https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/5GKM-JYGX].

*United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023) (quoting *BNSF Ry. Co. v. Loos*, 586 U.S. 310, 329 (2019) (Gorsuch, J., dissenting) (emphasis omitted)). Here, the statutory history of the INA confirms what the plain text already makes clear: aliens who entered the United States without admission and are later apprehended in the interior are "applicant[s] for admission" who must be detained pending removal under Section 1225(b)(2)(A).

In IIRIRA, Congress added the broad definition of "applicant for admission" to the INA. "Prior to the [IIRIRA], the INA assessed status on the basis of 'entry' as opposed to 'admission.'" *Martinez v. Att'y Gen.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012) (quoting 8 U.S.C. § 1101(a)(13) (1994)). Under this so-called entry doctrine, aliens who snuck into the United States without inspection were entitled to the procedural and substantive protections afforded in deportation proceedings. *Id.* Yet aliens who presented themselves to immigration officials for inspection—say, at a port of entry—were subject to "more summary exclusion proceedings." *Id.* (quotation omitted). This distinction—where aliens who followed the rules and presented for inspection were worse off than those who broke the law—created "a perverse incentive to enter at an unlawful rather than a lawful location." *Thuraissigiam*, 591 U.S. at 140.

IIRIRA did away with this anomaly. Congress replaced the entry doctrine with a criterion based on admission, which it defined as "*lawful* entry . . . after inspection and authorization." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Congress also added Section 1225(a)(1)—the definition of "applicant for admission"—and mandated detention for all such applicants while their removal proceedings play out. *See* 8 U.S.C. § 1225(b)(2)(A). By defining "applicant for admission" to include all aliens who have not been admitted, Congress thus eliminated the previous incentives to enter the country illegally.

### D. Marquez Vazquez's remaining arguments are unpersuasive.

According to Marquez Vazquez, the respondents ignore that an alien must be "seeking admission" to fall under the INA's mandatory-detention provision. Dkt. No. 2 at 18–19. Therefore, he argues, that provision cannot apply to aliens who were apprehended inside the United States years after their illegal entry. *Id.* But the way that the INA uses the term "seeking admission" illustrates that it is merely a corresponding gerund phrase for "applicant for admission." Subsection 1225(a)(3) provides that "[a]ll aliens . . . who are applicants for admission *or otherwise seeking admission* . . . shall be inspected." (emphasis added). Subsection 1225(a)(5) states that "[a]n applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant *in seeking admission* to the United States." (emphasis added). The logical import of this phrasing is that one who is an applicant for admission is considered to be "seeking admission" under the statute. Put another way, there is no material disjunction—by the terms of the statute or the English language—between the concept of "applying" for something and "seeking" something. Black's Law Dictionary defines "applicant" as "[s]omeone who requests something; a petitioner, such as a person who applies for letters of administration." (12th ed. 2024). Thus, an applicant for admission, in ordinary English usage, is one who requests (or seeks) something. Insofar as the term "applicant for admission" is more passive than "seeking admission," this is inherent in the nature of agent nouns and their corresponding gerunds.

Next, Marquez Vazquez argues that the respondents' interpretation of Section 1225 renders the recent Laken Riley Act (LRA) superfluous. Dkt. No. 2 at 20–21. The LRA—enacted in January 2025—mandates detention for aliens who are inadmissible and have

been arrested for, charged with, or convicted of certain crimes. As the argument goes, if the respondents are correct that Section 1225 requires detention for all inadmissible aliens, then the LRA "would be a meaningless legislative act." *Id.* at 20. But as Judge Eskridge explains in *Cabanas v. Bondi*, "prior Administrations for decades applied [the discretionary-detention provision] to individuals like [the] [p]etitioner." No. 4:25-CV-4830, 2025 WL 3171331, at *6 (S.D. Tex. Nov. 13, 2025). Therefore "at the time of enactment, the Laken Riley Act *did* have [real] effect, given that it *required* mandatory detention for criminal, inadmissible aliens who had not been subject to it . . . by longstanding practice of prior Administrations." *Id.* (emphasis in original). Thus, the LRA was far from meaningless—it narrowed the discretion afforded to any Administration exercising detention authority under Section 1226.

Moreover, Marquez Vazquez's superfluity argument, standing alone, is an insufficient basis to depart from the clear statutory text. The Supreme Court "has often recognized [that] '[s]ometimes the better overall reading of [a] statute contains some redundancy.'" *Barton v. Barr*, 590 U.S. 222, 239 (2020) (quoting *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019)). More to the point, "[r]edundancy in one portion of a statute is not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Id.* Indeed, the canons of statutory construction should only "be used to resolve remaining ambiguity," not to inject it where it does not exist. *Moore*, 71 F.4th at 395. Because the statutory text is clear, the Court must apply it as written. *See supra*, Section 3.B.

## 4.   Conclusion

Because Marquez Vazquez fails to show a substantial likelihood of success on the merits, the Court denies his emergency motion for TRO or preliminary injunction (Dkt. No. 2). Marquez Vazquez's habeas petition (Dkt. No. 1) remains pending.

So ordered on January 23, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE